UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIGUEL COSTA )<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>KOCAQI )<br>*Defendant*. ) | CASE NO. 3:24-CV-01586 (KAD)<br><br><br><br><br>JANUARY 9, 2024 |

## **INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Plaintiff, Miguel Costa ("Costa"), an unsentenced detainee at Corrigan-Radgowski Correctional Center ("Corrigan"), brings this action *pro se* pursuant to 42 U.S.C. § 1983 against correctional officer Kocaqi ("Kocaqi") in his individual and official capacities. Costa challenges the decision finding him guilty of Security Risk Group Affiliation, his resulting punishment, and his subsequent placement in the Security Risk Group unit at Corrigan, alleging that they violated his Eighth Amendment rights.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic*

*v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In conducting its initial review, a court may consider "relevant records and written correspondences" attached to the complaint, *see Breton v. Lamont,* No. 3:21-CV-719 (SRU), 2021 WL 3726011, at *2 (D. Conn. Aug. 23, 2021) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

**Allegations**

At the time of his complaint, Costa was an unsentenced detainee at Corrigan.[1] Costa claims that, while at Corrigan, Kocaqi issued two disciplinary reports against him: one for possessing drugs and one for Security Risk Group ("SRG") Affiliation. Compl., ECF No. 1 at ¶¶ 1–2. Costa pled guilty to the drug violation, *see id.* at ¶ 2, but Costa claims that Kocaqi falsely accused him of the SRG Affiliation violation. *See id.* at ¶¶ 3–5.

Costa attached to his complaint disciplinary records associated with the two violations, both of which occurred on June 3, 2024.[2] Among the attached records are the reports that Kocaqi initiated for each violation. According to Kocaqi's descriptions therein, both violations stemmed from his discovery of a "tightly wrapped piece of paper, located in a roll of tissue paper, along with a controlled substance," in Fox Pod Cell 223. *See id.* at pp. 20, 24.[3] With respect to the

---

[1] *See Offender Information Search,* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=385286 (visited October 30, 2024); In October, 2024, the Connecticut DOC Offender Information Search website listed Costa as unsentenced. When the Court revisited the same website on January 9, 2025, it found that Costa had been sentenced on December 23, 2024, but remains incarcerated at Corrigan. The Court takes judicial notice of this relevant matter of public record. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Goss v. City of New London*, No. 3:20-CV-01507(SALM), 2022 WL 375462, at *1 n.1 (D. Conn. Feb. 8, 2022) (taking judicial notice of the State of Connecticut DOC Offender Information Search website).

[2] Costa also attached a Disciplinary Process Summary Report from an April 19, 2024, hearing at which Costa pled guilty to possessing contraband. This appears to be a separate and distinct disciplinary report from those giving rise to the SRG Affiliation and the possession of contraband on June 3, 2024.

[3] Costa numbered some portions of his complaint but not others. For ease of reference when citing to page numbers, the Court uses the page numbers generated by the CMECF system.

controlled substance violation, the records show that on June 4, 2024, Costa pled guilty to possessing the substance, which according to Kocaqi's report, Costa admitted to owning and identified as Wellbutrin. *See id.* at p. 24–25. Though Kocaqi reported that he found the substance in Fox Pod Cell 223, Costa alleges in his complaint that this is false. *See id.* at p. 24, ¶¶ 4–5. He maintains that he pled guilty to possessing drugs because they were found on his person as he came out of the Restricted Housing Unit. *Id.* at ¶ 4. Costa further alleges that he never arrived at Fox Pod Cell 223, where Kocaqi located the SRG paperwork, *see id.* at p. 20, because he was placed back in the Restricted Housing Unit after officials discovered the drugs in his possession. *See id.* at ¶¶ 4–5.

In the disciplinary report pertaining to the SRG Affiliation, Kocaqi wrote that on June 3, 2024, he located the aforementioned tightly wrapped piece of paper and controlled substance inside a roll of tissue paper in Fox Pod Cell 223. *Id.* at p. 20. According to Kocaqi's description, Costa admitted that the controlled substance was his. *Id.* The piece of paper "contained Security Risk Group (SRG) Blood material consisting of a list of SRG Blood sets, bylaws, and other SRG Blood identifiers." *Id.* Based on this, Kocaqi issued Costa a Class A disciplinary report for "SRG Affiliation." *Id.* Because, as described above, Costa alleges that he never entered Fox Pod Cell 223, he claims that he could not have been in possession of the SRG paperwork found there. *See id.* at ¶ 5.[4] Costa requested video footage from the Fox Unit via Corrigan's Freedom of Information

---

[4] Perhaps Costa conflates the April 2024 disciplinary report with the June 2024 disciplinary report. While the contraband may have been found on his person in April, the June 3, 2024, report clearly reveals that the contraband was located in his cell, inside the SRG paperwork, and that it was identified by Costa as Wellbutrin and acknowledged as his own. Costa acknowledges a guilty plea to the June 3, 2024, contraband charge. *Id.* at ¶ 2. Costa does not explain how he could have possessed the contraband, which he admitted, but did not and could not have possessed the SRG paperwork in which the contraband was located. His allegations, which the Court assumes as true for the purposes of initial review, necessarily depict a scenario in which Kocaqi found the Wellbutrin on Costa's person as he was leaving the restricted housing unit, independently found the SRG paperwork in Fox Pod Cell 223 at some other time, and then fabricated the two disciplinary reports, in which he combined the two discoveries and falsely portrayed them as a single event.

3

("FOI") liaison to support his argument, but that request was denied because it did not contain sufficient information to be processed.[5] *See id.* at ¶¶ 6, 8, p. 27.

Records attached to the complaint show that a disciplinary hearing was conducted for Costa's SRG Affiliation violation on June 13, 2024 ("The June 13 hearing"). *Id.* at 21–22. Information about the hearing was memorialized in a "Disciplinary Process Summary Report" ("DPSR"), which showed that Costa received notice of the hearing and was accompanied to it by an advisor. *See id.* at 22. Costa did not identify any witnesses, pled not guilty to the allegation, and "stated that he is not part of any gang and that the paperwork that was said to be discovered was not his." *Id.* However, "[b]ased on the evidence and documentation that was submitted[,] the DHO found [Costa] guilty." *Id.*

Also on June 13, 2024, as a result of the guilty finding, Costa was designated as a "Blood" and SRG member, and as such was "subject to all the conditions listed in Administrative Directive 6.14, Security Risk Groups…"[6] *Id.* at 23. This decision was recorded on a separate form from the DPSR, titled "Security Risk Group Member Notification of Decision." *Id.* at 23. Costa appealed the guilty finding on a DOC "Appeal of Administrative Decision" form, dated June 16, 2024. *Id.* at 30–31. As the basis for his appeal, Costa maintained that he "was brought to a DHO Hearing and ultimately found guilty without being shown any evidence of . . . [the] material that was used

---

[5] It is unclear from the complaint and the attached documents whether Costa submitted his FOI request prior to his June 13 disciplinary hearing. Costa attached a letter from the Corrigan FOI liaisons, dated June 12, 2024, confirming that they received his request in regard to "S.R.G. Designation Criteria," and advising him that such information was exempt from disclosure *Id.* at 28. He also attached the letter from the liaisons denying his request for video preservation, dated June 17, 2024. *Id.* at 27. However, Costa did not include his FOI requests, so the Court does not have enough information to infer that he submitted his request for preservation with the intent to use the video at the June 13 hearing, or whether he only sought the video in conjunction with his later appeal.

[6] Other courts in this district have noted that Connecticut Department of Correction directives provide that an inmate who is found guilty of the charge of Security Risk Group Affiliation shall also be designated a Security Risk Group Member with no additional hearing required. *See Ayuso v. Semple*, No. 3:18-CV-116 (JAM), 2019 WL 2491628, at *5 (D. Conn. June 14, 2019); *Mitchell v. Washington*, No. 3:24-CV-864 (VAB), 2024 WL 5010487, at *4 (D. Conn. Dec. 6, 2024).

4

against [him]." *Id.* at 31. Costa also indicated that he was "not in any type of gang nor was [he] in possession of any [gang] material." *Id.* (bracketed material added). Costa's appeal was denied on August 9, 2024. *See id.* at 29, 31.[7]

**Discussion**

Costa sues Kocaqi for violating his rights under the Eighth Amendment. *See* Compl. at ¶ 1. However, the Eighth Amendment applies only to sentenced prisoners. *See Dooley v. Cook*, No. 3:20CV1329 (MPS), 2020 WL 6395576, at *6 (D. Conn. Nov. 2, 2020) (footnote omitted) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29-34, n. 9 (2d Cir. 2017); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)). Thus, as an unsentenced prisoner at the time of his complaint, *see supra*, Costa's claims are analyzed under the Fourteenth Amendment.

Read permissively, Costa brings both a procedural and substantive due process claim arising out of his disciplinary proceedings and his designation as an SRG Member.

*False Accusations*

Preliminarily, the Court observes that falsely accusing an inmate of misconduct does not itself violate the Constitution. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). In fact, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Id.* (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). There are, however, "two exceptions to this rule: when an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued

---

[7] It is also unclear whether Costa's attached appeal encompassed both the finding of guilt for his SRG Affiliation offense *and* his designation as an SRG member. His appeal form, dated June 16, 2024, and received by the district administrator on July 23, 2024, seems to conflate the two, *see* Compl. at pp. 30–31, and the district administrator's denial letter only addresses the SRG Affiliation offense, not the designation. *See id.* at p. 29. Further, Costa attached to his complaint a letter he received from a DOC assistant legal director, dated July 5, 2025, suggesting that he "avail [him]self" of the administrative processes in place to appeal his SRG designation decision. The Court notes that this distinction may be immaterial in light of the DOC's policies with respect to SRG Affiliation offenses, as cited by other courts in this district. *See* note 6, *supra*.

5

in retaliation for exercising a constitutionally protected right.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citation and internal quotation marks omitted); *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) ("[An] inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights."); *Jackson v. Dzurenda*, No. 11 Civ. 1668 (RNC), 2012 WL 5448330, at *2 (D. Conn. Nov. 7, 2012) ("An inmate's protection against false accusations lies in the procedural due process requirements to be applied by prison officials who conduct the disciplinary hearing." (citation omitted)).

*Fourteenth Amendment Due Process*

A state prisoner's right to due process is secured by the Fourteenth Amendment, which provides that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It protects the right to both procedural and substantive due process. *See Jusino v. Gallagher*, No. 3:21-CV-689 (SRU), 2022 WL 2078159, at *3 (D. Conn. June 9, 2022) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

Reading his complaint permissively, Costa's claims that he was prevented from presenting evidence and not adequately appraised of the evidence against him in the June 13 disciplinary hearing, *See* Compl. at ¶¶ 5–6, p. 31, implicate his right to procedural due process. His objection to his administrative designation as an SRG member following the hearing, *see id.* at ¶¶ 5–7, p. 23, implicates his right to substantive due process. The Court addresses each in turn.

**Procedural Due Process**

With respect to Kocaqi's allegedly false disciplinary reports, Costa does not allege "that the report[s] [were] issued in retaliation for exercising a constitutionally protected right." *Willey*, 801 F.3d at 63. Thus, to state a claim for violation of his constitutional rights, Costa must allege

6

facts showing that "he was disciplined without adequate due process as a result of the report." *Id.* Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023) (internal quotations and citation omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). For prisoners, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). However, the limitation on liberty interests imposed by *Sandin* applies only to sentenced prisoners, and not to pretrial detainees, such as Costa. *See Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir. 2001). "[A] state's authority over pretrial detainees is limited by the Constitution in ways that the treatment of convicted persons is not." *McGarry v. Pallito*, 687 F.3d 505, 513 (2d Cir. 2012). Pretrial detainees, therefore, have "a constitutional right to be free from conditions of confinement that amount to punishment, because the government has no right to punish a pre-trial detainee prior to an adjudication of guilt in accordance with due process of law." *Banks v. Michaud*, No. 3:20-CV-00326 (JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

Before he can be subjected to disciplinary punishment, a pretrial detainee must be given "'written notice, adequate time to prepare a defense, a written statement of the reasons for action

taken, and a limited ability to present witnesses and evidence'" *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55, n. 3 (2d Cir. 2017) (quoting *Benjamin*, 264 F.3d at 190). With those provisions in place, disciplinary punishment may only be imposed "upon a showing of 'some reliable evidence' of guilt." *Elder v. McCarthy*, 967 F.3d 113, 117 (2d Cir. 2020) (quoting *Sira v. Morton*, 380 F.3d 57, 81 (2d Cir. 2004)).

At the June 13 hearing, Costa was found guilty of SRG Affiliation based on Kocaqi's report. Compl. at pp. 21–22. The DPSR from the hearing that Costa attached to his complaint shows that he was subject to certain "Sanctions/Penalties." *Id.* at 21. Because he was a pretrial detainee, any proceeding that subjected Costa to sanctions or penalties must therefore comply with the due process protections described in *Allah*. Costa alleges that he was prevented from presenting potentially exculpatory video evidence, and that he was "ultimately found guilty without being shown any evidence of any such material that [was] used against [him]." Compl. at ¶¶ 6–7, p. 31.

The Court, however, does not decide herein whether Costa has plausibly alleged a violation of his procedural due process rights because, as explained in further detail below, the only defendant that he identifies is Kocaqi, who is not alleged to have been and does not appear to have been personally involved in any alleged constitutional deprivations.

### Substantive Due Process

Pursuant to the Fourteenth Amendment, substantive due process "protects individuals against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense," in some circumstances, "regardless of the fairness of the procedures used." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations and quotations omitted).

As described above, a pretrial detainee "'may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Allah*, 876 F.3d at 55 (quoting *Bell* 441 U.S. at 535).

8

However, "[n]ot every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense." *Bell*, 441 U.S. at 537. In evaluating whether a restrictive status or condition imposed on a pretrial detainee violates the detainee's substantive due process rights, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." *Id.* at 540.[8]

      Costa's complaint implies that his designation as an SRG member and, by extension, the restrictions subsequently placed on him, were "arbitrary and purposeless" and "excessive in

---

[8] The imposition of valid administrative restrictions requires fewer procedural safeguards than the imposition of punishment. A pretrial detainee "'must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation,' and the 'proceeding must occur within a reasonable time following an inmate's transfer.'" *Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir. 2009) (quoting *Hewitt v. Helms,* 459 U.S. 460, 473 (1983)).

9

relation to the alternative purpose assigned." However, as with his procedural due process claim, to the extent that Costa raises a substantive due process claim, the Court does not evaluate it because he does not allege that any named defendant was personally involved in the violation.

### Personal Involvement

Even if Costa plausibly alleges constitutional violations, not decided herein, he has not adequately alleged that Kocaqi, the only named defendant, was personally involved in those violations. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). "Personal involvement" means direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

The DPSR that Costa attached to his Complaint reveals that Kocaqi's role in the June 13 Hearing was that of "reporting employee." *Id.* at p. 21. Costa does not allege that Kocaqi had any involvement in denying his FOI request for the allegedly exculpatory video footage, nor that he had any role in the administration of the June 13 hearing, nor the ultimate decision, nor that he was involved in Costa's subsequent SRG designation. "The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986). None of the records attached to Costa's complaint indicate whether Kocaqi testified or was otherwise involved in Costa's proceedings after filing the initial disciplinary reports. And even if Kocaqi had testified, and had done so falsely, his involvement would still not constitute a due process violation. *See Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior

reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process." (internal citations omitted)).

Costa has not set forth any facts supporting the inference that Kocaqi was personally involved in the constitutional violations that he alleges. His procedural and substantive due process claims are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

*Official Capacity Claim*

Costa seeks monetary damages from Kocaqi. *See id.* at p. 14. The Eleventh Amendment prohibits an award of monetary damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Costa alleges no facts suggesting that the state has waived immunity in this case. Thus, Costa cannot receive damages from Kocaqi in his official capacity. Any claim for damages against Kocaqi in his official capacity is dismissed under 28 U.S.C. § 1915A(b)(2).

**Conclusion**

For the foregoing reasons, Costa's complaint is DISMISSED without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915A(b).

The Court affords Costa the opportunity to file an amended complaint in order to correct the deficiencies identified in this initial review order. Costa is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. If Costa fails to submit an amended complaint on or before **February 17, 2025**, the Court will dismiss this action without prejudice for failure to state a claim upon which relief may be granted and direct the Clerk of the court to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of January 2024.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE