UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIGUEL COSTA,<br>    *Plaintiff*, | ) CASE NO. 3:24-cv-01586 (KAD)<br>)<br>) |
| v. | )<br>) |
| KOCAQI, *et al.*,<br>    *Defendants*. | ) April 25, 2025<br>) |

**INITIAL REVIEW ORDER**
**RE: AMENDED COMPLAINT (ECF NO. 13)**

Kari A. Dooley, United States District Judge:

Plaintiff, Miguel Costa ("Costa"), a sentenced inmate at Corrigan-Radgowski Correctional Center ("Corrigan"), brings this action *pro se* pursuant to 42 U.S.C. § 1983 against five prison officials in their individual and official capacities. Am. Compl., ECF No. 13, at 2–3.[1] After reviewing Costa's original complaint under Section 1915A of Title 28 of the United States Code, the Court construed the complaint to allege both procedural and substantive due process claims under the Fourteenth Amendment arising out of Costa's disciplinary proceedings and his designation as a Security Risk Group ("SRG") member. Initial Review Order ("IRO"), ECF No. 12, at 5.

However, the Court concluded that Costa's original complaint did not plausibly allege a procedural due process violation because Costa failed to allege facts suggesting that the only defendant named therein—correctional officer ("CO") Kocaqi—was personally involved in any alleged constitutional deprivations. *See id.* at 8, 10. Thus, because Costa failed to allege facts suggesting Kocaqi was personally involved in violating Costa's constitutional rights and because

---

[1] When the Court cites to pages in the Amended Complaint, it is to the page numbers assigned by the CMECF system. When citing the paragraphs, the Court refers to Plaintiff's handwritten, sequentially numbered allegations on pages 5–9.

Costa could not pursue damages against Kocaqi in his official capacity, the Court dismissed Costa's claims pursuant to 28 U.S.C. § 1915A(b)(2). *Id.* at 11. The dismissal was without prejudice, and afforded Costa an opportunity to file an amended complaint "to correct the deficiencies identified in [the] initial review order." *Id.* In his Amended Complaint, Kocaqi is no longer named as a defendant.  Plaintiff names CO Garcia, Lieutenant ("LT") Czeremcha,[2] District Administrator ("DA") Craig Washington, Captain Papoosha and Warden Dougherty. He again asserts due process violations stemming from his disciplinary proceedings and SRG designation but also expands considerably the scope of his claims. For the reasons discussed below, the Court examines only his due process claims.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In conducting its initial review, a court

---

[2] This Defendant is incorrectly listed on the docket as Czereincha.  The Clerk of the Court is respectfully requested to correct the spelling of this defendant's name.

may consider "relevant records and written correspondences" attached to the complaint. *See Breton v. Lamont*, No. 3:21-CV-719 (SRU), 2021 WL 3726011, at *2 (D. Conn. Aug. 23, 2021) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

The Court's review of an amended complaint differs in some respects from its review of an original complaint. If, as here, a plaintiff files an amended complaint after being granted leave of court to do so, the plaintiff's amended complaint must not exceed the scope of the Court's order granting leave to amend for a limited purpose. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F.App'x 40, 43 (2d Cir. 2012) (collecting cases) (observing that "[d]istrict courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."). Because the purpose of an amended complaint is "to clarify or amplify the original cause of action, not add new causes of action," *Castellano v. Trump*, No. 3:17-CV-381 (MPS), 2017 WL 4401451, at *1 (D. Conn. Sept. 29, 2017), the Court's review of Costa's Amended Complaint is limited to whether he has pled additional facts to support a due process claim. *See Jordan v. Quiros*, No. 3:23-CV-254 (VAB), 2024 WL 3219130, at *4 (D. Conn. June 28, 2024) (refusing to consider plaintiff's "new theories of liability or new claims" in second amended complaint because it would defy purpose of amended complaint).

**Allegations**

Because "[t]he Second Circuit has long held that an amended complaint completely replaces the original complaint," *Jordan v. Chiaroo*, No. 3:24-CV-204 (VAB), 2024 WL 3925375, at *3 (D. Conn. Aug. 23, 2024) (citing *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) (holding that the amended complaint completely replaces original complaint)), the Court will not consider allegations from Plaintiff's original complaint in considering the factual basis for

his claims. *See Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint."). And while the Court has considered all allegations in Costa's Amended Complaint, the Court recites here only those facts necessary to provide context for its initial review.

According to the Department of Correction's website, Costa was an unsentenced detainee at Corrigan when he filed his original complaint.[3] *See* IRO at 2, n.1. In his Amended Complaint, Costa alleges that on June 3, 2024, CO Kocaqi issued Costa a disciplinary report for possessing "SRG"[4] material ("the DR").[5] Am. Compl. at ¶ 1. Costa attached a copy of the DR to his amended complaint. *Id.* at 15. The DR states that Kocaqi "discovered a tightly wrapped piece of paper, located in a roll of tissue paper along with a controlled substance, which inmate Costa . . . admitted to being his." *Id*. The "tightly wrapped piece of paper" "contained Security Risk Group (SRG) Blood material consisting of a list of SRG Blood sets, bylaws, and other SRG Blood identifiers." *Id.* The DR stated that the paper containing the SRG material was "found[] in Fox Pod Cell 223." *Id*. However, Costa disputes that the material was in that cell. *Id.* ¶ at 2.

A hearing on the DR was held on June 13, 2024. *Id.* at ¶ 3. The proceedings were memorialized in a "Disciplinary Process Summary Report" ("DPSR"), which Costa also attached

---

[3] The same website now shows he was sentenced on December 23, 2024. *See Offender Information Search*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=385286 (last visited April 24, 2025). The Court takes judicial notice of this relevant matter of public record. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Goss v. City of New London*, No. 3:20-CV-01507(SALM), 2022 WL 375462, at *1 n.1 (D. Conn. Feb. 8, 2022) (taking judicial notice of the State of Connecticut DOC Offender Information Search website).

[4] "SRG" is an acronym for Security Risk Group. *Mitchell v. Washington*, No. 3:24-CV-864 (VAB), 2024 WL 5010487, at *1 n.4 (D. Conn. Dec. 6, 2024). "[T]he Security Risk Group/Gang Management Unit is responsible for proactively collecting, evaluating and disseminating security related gang intelligence on the 13 designated Security Risk Groups that exist among the offender population." *Id.* (quotation marks omitted).

[5] Costa also received another disciplinary report for possessing Wellbutrin, a controlled substance. *See* Am. Compl. at 13–14. Costa pled guilty to this report, *see id.* at 14, and it is not relevant to Costa's claim. Thus, any reference to "the DR" refers to the DR Costa received for possessing SRG material.

4

to his Amended Complaint. *See id.* at 19–20 (DPSR). The DPSR states that Costa received notice of the hearing, was assisted there by an advisor, and pled "not guilty." *Id.* at 20. Costa did not call any witnesses but testified that he did not belong to a gang and that the SRG paperwork was not his. *Id*. The hearing officer, Lieutenant Czeremcha, found Costa guilty "[b]ased on the evidence and documentation that was submitted[.]" *Id.* Costa was "not able to see the 'material' which allegedly contained 'blood' identifiers, nor any other possible evidence." *Id.* at ¶ 3. Costa was thereafter designated an SRG member "under the 'Blood' set," *id.* at ¶ 4, which "subject[ed] [him] to all the conditions listed in Administrative Directive 6.14" and made him ineligible to earn "Risk Reduction Earned Credits in accordance with Administrative Directive 4.2A."[6] *Id.* at 16 (Security Risk Group Member Notification of Decision).

Costa appealed the SRG designation on June 16, 2024, maintaining he was not in a gang and did not possess any SRG material.[7] *Id.* at ¶ 8; *see also id.* at 21–22 (Appeal of Administrative Decision). Costa also maintained that he was found guilty without seeing any evidence of SRG material. *Id*. at ¶ 8. District Administrator Craig Washington denied Costa's appeal, stating "'no due process failure occurred in the disposition of [Costa's] disciplinary report.'" *Id.* at ¶ 9.[8] On June 12, 2024, prior to his June 13 hearing, Costa filed a Freedom of Information ("FOI") request

---

[6] Other courts in this district have noted that Connecticut Department of Correction directives provide that an inmate who is found guilty of the charge of Security Risk Group Affiliation shall also be designated a Security Risk Group Member with no additional hearing required. *See Mitchell v. Washington*, No. 3:24-CV-864 (VAB), 2024 WL 5010487, at *4 (D. Conn. Dec. 6, 2024); *Ayuso v. Semple*, No. 3:18-CV-116 (JAM), 2019 WL 2491628, at *5 (D. Conn. June 14, 2019);.

[7] It is unclear whether Costa's attached appeal encompassed both the finding of guilt for his SRG Affiliation offense and his designation as an SRG member. His appeal form, dated June 16, 2024, and received by the district administrator on July 23, 2024, seems to conflate the two. *See* Am. Compl. at 21–22. The Court notes that this distinction may be immaterial in light of the DOC's policies with respect to SRG Affiliation offenses, as cited by other courts in this district. *See* note 5, *supra*.

[8] Though Costa alleges that his appeal was denied on July 23, 2024, Am. Compl. at ¶ 9, the attached appeal form lists the "Date of Disposition" as August 9, 2024. *Id.* at 21. It was signed by District Administrator Washington on the same date. *Id*. The Court also notes that the attached form indicates that District Administrator Washington set forth his reasons for denying Costa's appeal in an attached letter. *Id.* Costa attached that letter to his original Complaint, but did not include it with his Amended Complaint. *See* Compl., ECF No. 1, at 29.

5

seeking information related to his "SRG information." *Id.* at ¶ 11; *see also id.* at 17 (June 12, 2024, letter acknowledging FOI request). An FOI liaison denied the request. *Id.* at ¶ 11. Costa also unsuccessfully sought video footage relating to the search of cell F223. *Id.* at ¶ 12; *see also id.* at 18 (letter denying request).[9]

To date, Costa remains an SRG-designated inmate. *Id.* at ¶ 13. Costa claims that, as a result of his designation, gang members have placed his safety at risk, he is forced to eat in his cell next to his toilet, he is unable to clean his cell, and he is denied medical treatment, programming, showers, and religious services. *Id.* Costa is sometimes locked in his cell for over 72 hours and is subject to shakedowns and lockdowns. *Id.*

**Discussion**

Although Costa used a standard District of Connecticut form to submit his Amended Complaint, he does not identify the relief he seeks. The Court therefore reads his Amended Complaint to include the request for relief from his original complaint, in which he sought only money damages.[10] As such, the Court construes all claims as brought against the defendants in their individual capacities.[11]

---

[9] On February 3, 2025, after filing his Amended Complaint, Costa filed an "Exhibit" to the docket, as an attachment to the Amended Complaint. The exhibit contained Costa's January 14, 2025, request for "video footage from F Block at 3:15 PM – 7 PM for 6/3/24 and also the footage for E Block for 6/23/24 at 1:45 PM – 2:45 PM." ECF No. 14 at 3. The exhibit also included a letter denying his request, dated January 24, 2025. *Id.* at 2. The exhibit does not contain any additional allegations, or references to any of the defendants named in the Amended Complaint.

[10] Costa was advised in the Initial Review Order dismissing his original complaint that "any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference." IRO at 11. Nonetheless, affording Plaintiff the special solicitude due to a *pro se* litigant and in the interests of judicial efficiency, the Court reads Plaintiff's original request for relief into his Amended Complaint. *See Moses v. St. Vincent's Special Needs Ctr., Inc.*, No. 3:17-CV-1936 (SRU), 2021 WL 1123851, at *4, n. 4 (D. Conn. Mar. 24, 2021), *aff'd sub nom. Moses v. St. Vincent's Special Needs Ctr.*, No. 22-914, 2024 WL 747905 (2d Cir. Feb. 23, 2024).

[11] "[A] Section 1983 claim for damages against a state official can only be asserted against that official in his or her individual capacity." *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 138 (2d Cir. 2025) (quoting *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).

Costa asserts three claims in his Amended Complaint. First, Costa claims prison officials violated his First Amendment rights by denying him access to religious activities while in the SRG unit. Am. Compl. at ¶ 14. Second, Costa asserts a conditions-of-confinement claim under the Eighth Amendment related to his living conditions in the SRG unit. *Id.* And third, Costa asserts his original Fourteenth Amendment due process claim related to his guilty finding at the June 13 hearing and subsequent SRG designation. *Id.* As discussed above, because Costa's First and Eighth Amendment claims are beyond the scope of the Court's leave to amend, the Court will not consider them here. *See Palm Beach*, 457 F.App'x at 43; *Jordan*, 2024 WL 3219130, at *4. The Court will, however, consider whether Costa has alleged additional facts sufficient "to correct the deficiencies identified in [the] initial review order." IRO at 11.

Costa's original Complaint was deficient because it failed to allege facts allowing the inference that Kocaqi violated Costa's right to due process under the Fourteenth Amendment. *See id.* at 8, 10. To remedy that deficiency, Costa must allege facts showing Kocaqi's or another defendant's personal involvement in the alleged violation. In his Amended Complaint, Costa no longer lists Kocaqi as a defendant at all. *See* Am. Compl. at 2–3. Instead, he names five new defendants: CO Garcia, LT Czeremcha, DA Washington, Warden Dougherty, and Captain Papoosha. *Id.* Costa must allege the personal involvement of at least one of these defendants to address the deficiencies identified in the Initial Review Order.

*Fourteenth Amendment Due Process*

A state prisoner's right to due process is secured by the Fourteenth Amendment, which provides that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It protects the right to both procedural and

substantive due process. *See Jusino v. Gallagher*, No. 3:21-CV-689 (SRU), 2022 WL 2078159, at *3 (D. Conn. June 9, 2022) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

Reading his complaint permissively, Costa's claim that he was not adequately appraised of the evidence against him at the June 13 disciplinary hearing implicates his right to procedural due process. S*ee* Am. Compl. at ¶ 3. His objection to his designation as an SRG member following the hearing implicates his right to substantive due process. *See id*. at ¶ 8. The Court addresses each in turn.

### Procedural Due Process

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023) (internal quotations and citation omitted). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id*. (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). For prisoners, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

However, the limitation on liberty interests imposed by *Sandin* applies only to sentenced prisoners, and not to pretrial detainees, such as Costa at the time of the June 13 hearing. *See Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir. 2001). "[A] state's authority over pretrial detainees is limited by the Constitution in ways that the treatment of convicted persons is not."

8

*McGarry v. Pallito*, 687 F.3d 505, 513 (2d Cir. 2012). Pretrial detainees, therefore, have "a constitutional right to be free from conditions of confinement that amount to punishment, because the government has no right to punish a pre-trial detainee prior to an adjudication of guilt in accordance with due process of law." *Banks v. Michaud*, No. 3:20- CV-00326 (JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

Before a pretrial detainee can be subjected to disciplinary punishment, he or she must be given "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 n.3 (2d Cir. 2017) (quoting *Benjamin*, 264 F.3d at 190).[12] With those provisions in place, disciplinary punishment may only be imposed "upon a showing of 'some reliable evidence' of guilt." *Elder v. McCarthy*, 967 F.3d 113, 117 (2d Cir. 2020) (quoting *Sira v. Morton*, 380 F.3d 57, 81 (2d Cir. 2004)).

Costa was found guilty of SRG Affiliation at the June 13 hearing. *See* ECF No. 13 ¶ 4, 6, p. 20. The DPSR from the hearing shows that, as a result, Costa was subject to certain "Sanctions/Penalties." *Id*. at 19. Because Costa was a pretrial detainee, any proceeding that subjected him to sanctions or penalties must therefore comply with the due process protections described in *Allah*. Costa alleges that, at the June 13 hearing, he was "not able to see the 'material' which allegedly contained 'Blood' identifiers, nor any other possible evidence." *Id.* at ¶ 3. While this allegation does not squarely fit within the categories of rights described in *Allah*, *see* 876 F.3d at 55 n.3, the Second Circuit has recognized that "[a]n inmate's due process right to know the evidence upon which a discipline ruling is based is well established." *Sira*, 380 F.3d at 74 (citing *Wolff,* 418 U.S. at 564–65; *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir. 1989)). "Such disclosure

---

[12] *Benjamin* draws this rule from the Supreme Court's holding in *Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974).

9

affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects in the evidence." *Id.*

"Courts have long recognized, however, that the right to know evidence supporting prison disciplinary rulings is not absolute." *Id.* (citing *Wolff*, 418 U.S. at 564–65). For example, when disclosure of the evidence presents a risk of "violence or intimidation directed at either other inmates or staff… hearing officers may properly decline to inform an inmate of the adverse evidence." *Id.* (internal citations and quotation marks omitted). But absent such a justification, the evidence must be disclosed. *See id.* at 74–76 (concluding that plaintiff "present[ed] a viable due process claim based on non-disclosure of evidence" where prison officials failed to disclose the "identities of the confidential informants who inculpated him . . . and the substance of their statements" without providing a sufficient security justification).

Costa alleges that he was "designated a[n] SRG member under the 'Blood' set without being shown any evidence." Am. Compl. at ¶ 4. The Court cannot discern from Costa's complaint or its attachments any sufficient security justification for prison officials' failure to disclose "the 'material' which allegedly contained 'Blood' identifiers[.]" Am. Compl. at ¶ 3. That "material" was, according to the DR, "a piece of paper contain[ing] Security Risk Group (SRG) Blood material consisting of a list of SRG Blood Sets, bylaws, and other SRG Blood Identifiers." *Id.* at 15. If prison officials sought to discipline Costa for possessing that piece of paper, there seems to be no discernable security risk in allowing Costa to view something he had allegedly already possessed. While "[i]t is possible that on further development of the record defendants will be able to justify withholding [the evidence] from [Costa]," *Sira*, 380 F.3d at 76 (bracketed material substituted), or they will be able to challenge the accuracy of this allegation, the Court "conclude[s] that he presents a viable due process claim based on non-disclosure of evidence." *Id.*

Of the five Defendants named in the Amended Complaint, the facts alleged by Costa allow the Court to infer that only one of them, Lieutenant Czeremcha, was personally involved in the withholding of evidence. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). "Personal involvement" means direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). This is true with respect to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

According to the Amended Complaint, CO Garcia (first defendant) investigated and documented that Costa was in the Restrictive Housing Unit on June 3, 2024. Am. Compl. at ¶ 5. District Administrator Washington (third defendant) was not involved in the hearing at all—he merely denied Costa's appeal.[13] *Id.* at ¶ 9. Warden Dougherty's (fourth defendant) involvement was limited to receiving a copy of Costa's appeal to Washington, *id.* at ¶ 10, which does not establish personal involvement. *See* note 13, *supra*. And Costa only mentions Captain Papoosha as "oversee[ing] SRG, along with the other defendants named in this amendment." *Id.* at ¶ 13. This allegation, by itself, is insufficient to establish personal involvement. *See*, *e.g.*, *Washington v. Piper*, No. 18 CV 7783 (NSR), 2019 WL 6343516, at *3 (S.D.N.Y. Nov. 26, 2019) (noting that

---

[13] "Since *Tangreti*, district courts have held that review of a grievance, administrative, or disciplinary appeal is insufficient to establish the reviewer's personal involvement in claims relating to the underlying proceeding." *Muniz v. Cook*, No. 3:20-CV-1533 (MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021) (collecting cases).

11

"[w]ithin this circuit, courts have held that the mere allegation of supervisory approval, without more, is insufficient to show any personal involvement.").

The DPSR shows that LT Czeremcha (second defendant) was the hearing officer at the June 13 hearing. S*ee id.* at 19–20. Though Costa does not directly allege that Czeremcha withheld evidence from him, he alleges that "during my 'hearing' I was not able to see the 'material' which allegedly contained 'blood' identifiers, nor any other possible evidence."[14] Costa's allegation that he was denied the ability to review evidence "during [his] hearing," combined with the attached DPSR identifying Czeremcha as the officer in charge of that hearing, *id.* at 19–20, is sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Therefore, Costa's Fourteenth Amendment procedural due process claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(2) as to Defendants Garcia, Washington, Dougherty, and Papoosha. His procedural due process claim may proceed as to Defendant Czeremcha.

**Substantive Due Process**

Pursuant to the Fourteenth Amendment, substantive due process "protects individuals against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense," in some circumstances, "regardless of the fairness of the procedures used." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations and quotations omitted).

---

[14] The Court notes that in Costa's original Complaint he alleged that he was not allowed to access surveillance video evidence. Compl. at ¶¶ 6–8. He included one reference to that allegation in the Amended Complaint. Am. Compl. at ¶ 12 ("On 6/17/24 I was also denied video footage for 6/2/24 3:25 PM pertaining to the search of Cell F223 and alleged finding of material."). He also filed an exhibit to the Amended Complaint showing a later denial of his request to access such evidence. *See* note 9, *supra.* Costa does not allege that any defendant named in the Amended Complaint was responsible for withholding that material. Even if the Court were to consider the alleged withholding of this video evidence as described in the original Complaint, Costa only referenced it in conjunction with his appeal, not the June 13 Hearing. *See* Compl. at ¶ 6 ("I had filed an appeal about this matter I even request for the housing unit cam[e]ra footage from FOI also known as Freedom of Information and I was denied."). These allegations would not support the inference that Lieutenant Czeremcha or any named defendant was involved in withholding the video evidence.

As described above, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Allah*, 876 F.3d at 55 (quoting *Bell*, 441 U.S. at 535). However, "[n]ot every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense." *Bell*, 441 U.S. at 537. In evaluating whether a restrictive status or condition imposed on a pretrial detainee violates the detainee's substantive due process rights, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538.

To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id*. (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69 (1963)). Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539. If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." *Id*. at 540.

Costa's complaint implies that his designation as an SRG member and, by extension, the restrictions subsequently placed on him, were "arbitrary and purposeless" and "excessive in relation to the alternative purpose assigned." He alleges that he was found guilty of SRG affiliation

without an opportunity to review the evidence against him, which resulted in his SRG designation on the same day. Costa maintains that, while in the SRG unit, his safety is at risk because he is housed with known gang members. *Id.* at ¶ 13. Costa must eat in his cell by his toilet, cannot clean his cell, and is denied medical treatment, programming, showers, and religious services. *Id.* He maintains that he is sometimes confined to his cell for "more than 72 hours" and is "subject to strategic shakedowns and lockdowns." *Id.*

At this stage, the Court cannot discern whether the restrictive conditions imposed on Costa pursuant to his placement in the SRG Program were reasonably related to a safety or security concern of the Department of Correction ("DOC") or were arbitrary and therefore punitive. *See Benjamin v. Fraser,* 264 F.3d 175, 183, 188 (2d Cir. 2001) (noting that an administrative confinement status, although characterized as non-punitive or as having been imposed due to safety/security concerns, may involve punishment). Accordingly, Costa's Fourteenth Amendment claim that his placement in the SRG Program was punitive shall proceed. *See*, *e.g.*, *Trimmier v. Cook*, No. 3:20CV396 (KAD), 2020 WL 5231300, at *5 (D. Conn. Sept. 2, 2020) (permitting such a claim to proceed to service); *Caves v. Payne,* No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *6 (D. Conn. Apr. 6, 2020) (same); *Shaw v. Washington*, No. 3:24-CV-00654 (KAD), 2024 WL 2053403, at *4 (D. Conn. May 8, 2024) (same).

However, the claim shall proceed only against those defendants who the Court may reasonably infer, based on Costa's factual allegations, were personally involved with placing Costa in the SRG Program, Defendants Papoosha, and Czeremcha. Costa alleges no facts suggesting Garcia, Dougherty, or Washington were personally involved in his SRG designation. Accordingly, Costa's claims against Garcia, Washington, and Dougherty are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Any claims against Defendants in their official capacities are also dismissed. The Eleventh Amendment prohibits an award of monetary damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Costa alleges no facts suggesting that the state has waived immunity in this case. Thus, Costa cannot receive damages from Defendants in their official capacities. Any claim for damages against Defendants their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**Conclusion**

Costa may proceed on his Fourteenth Amendment procedural due process claim for damages against Defendant Czeremcha in his individual capacity, and his substantive due process claim for damages against Defendants Papoosha and Czeremcha in their individual capacities. All other claims are dismissed, and the Clerk is directed to terminate Defendants Garcia, Washington and Dougherty.

**Orders**

The court enters the following additional orders.

(1) **The Clerk shall** verify the current work address for each Defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each Defendant at the address provided on or before May 20, 2025, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure

4(d).

(2) **The Clerk shall** send Costa a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by November 24, 2025. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed on or before December 29, 2025.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Costa changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court**. Failure to do so can result in the dismissal of the case**. Costa must give notice of a new address even if he is incarcerated. Costa should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Costa has more than one pending case, he should indicate all the case numbers in the notification of change of address. Costa should also notify the Defendants or the attorney for the Defendants of his new address.

(9) Costa shall utilize the Prisoner Efiling Program when filing documents with the court. Costa is advised that the Program may be used only to file documents with the court. As local court

rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of April, 2025.

                                              */s/ Kari A. Dooley*
                                              KARI A. DOOLEY
                                              UNITED STATES DISTRICT JUDGE